### SALMON et al. v. JOBBINS et al.

(Supreme Court, Appellate Division, First Department.  November 20, 1896.)

BROKER'S COMMISSION—REDUCTION OF CONTRACT PRICE—EFFECT.

Where a company agreed to pay $20,000 for Canadian patent rights, and to purchase chemicals, at a specified price, to use with the process, but afterwards refused to comply, claiming misrepresentations by the owners of the patents, and the contract was modified by an agreement "to deliver to buyers of the Canadian patents $10,000 worth of chemicals named in the said contract," the modification was a bonus to secure the contract, and did not so change the price of the Canadian rights as to defeat a broker's full commissions for securing the contract, though it deprived him of commissions on the chemicals.

Appeal from judgment on report of referee.

Action by Hamilton H. Salmon and another against William F. Jobbins and another.  There was a judgment in favor of plaintiffs, and defendants appeal.    Affirmed.

The action is brought to recover one-half of a broker's commission. The defendants are the proprietors of a patented process for the manufacture of glycerin. On January 13, 1893, they entered into a contract with one Wood to pay him, among other things, a commission of 10 per cent. of all moneys, in payment for licenses to manufacture by their process, received under contracts obtained by Wood, and 2 per cent. of the amounts received for chemicals sold under such contracts. On September 16, 1893, a contract (obtained by Wood and Harris, local brokers) was entered into between the defendants and the Hamilton Powder Company, of Montreal, Canada. By this contract the powder company agreed to pay the defendants $20,000 for the sole license to use the defendants' process in the dominion of Canada, with the right to take out a patent therefor in the province of Newfoundland. This sum was to be paid by six promissory notes of equal amount, dated September 1, 1894, at 4, 8, 12, 16, 20, and 24 months. The powder company afterwards claimed that it had bought a larger plant than it otherwise would, by reason of the representations of Harris and the defendant Jobbins that sufficient waste soap leys could be obtained in Montreal to run the larger plant, and declined to carry out the contract as originally made. Harris and Jobbins agreed that they had unintentionally deceived the company, and on October 17, 1894, a modification agreement was executed by the defendants and the company, which recites: "It is hereby mutually agreed that, in consideration that the soap manufacturers of Montreal have misinformed us as to the amount of tallow and oils used by them, whereby the profits from the plant at St. Henri are unfavorably affected, we, Jobbins and Van Ruymbeke, do hereby agree that we will deliver to the buyers of the Canada patents ten thousand dollars' worth of the chemicals named in the said contract for the sale of the said patent rights," etc. At the trial the defendant Jobbins, who participated in the negotiations with the powder company which led up to the modification agreement, testified that the real agreement was that the defendants should reduce the license fee to $10,000, and that the company should bind itself to purchase $10,000 worth of chemicals, including in this amount about $1,150 worth already delivered; that these chemicals should be delivered as the company might order them; and that notes should be given for the license fee and the chemicals at the same dates, and for the same amounts, as specified in the original contract with regard to payment of the license fee, each note being one-half for license fee, one-half for chemicals. No witness was called in contradiction of this testimony. The agreement between Harris and Wood was that the former should receive one-half of the latter's fee. The plaintiffs are assignees of the other one-half of the sum due

Wood. The referee awarded them the sum of $166.66, and interest from January 4, 1895, being 5 per cent. of the sum of $3,333.33, the amount of the first note given by the powder company, and the only one which had fallen due when the action was brought.

Argued before VAN BRUNT, P. J., and BARRETT, WILLIAMS, PATTERSON, and O'BRIEN, JJ.

John S. Davenport, for appellants.

George P. Gordel, for respondents.

BARRETT, J. We need add but little to the careful opinion of the learned referee. In our judgment, the testimony of Mr. Jobbins should not be deemed controlling, and the referee might well have rested his decision upon the practical elimination of that testimony as a governing factor in the case. Mr. Jobbins was a party defendant, and his testimony bears inherent marks of untrustworthiness. He was directly interested in testifying as he did, since the plaintiffs were entitled to 10 per cent. upon the license, and to but 2 per cent. upon the chemicals. He was not corroborated by Harris (Harris was not called as a witness), and he was contradicted by the writing which evidenced the supplementary agreement. Whether the oral negotiations were or were not merged in this paper writing, the latter must still be considered upon the question of credibility, as well as in determining what the supplementary agreement really was. Viewed in its least binding aspect, this writing is certainly a credible witness, and its testimony is in entire harmony with the surroundings. It is, in fact, essentially unlikely that the notes given for the license should have been split up in the way that the defendants claim, and apportioned, one-half for the license, and one-half for chemicals which had not been delivered, and might not be for months. This improbability the referee points out, though he places his decision, in part, upon the merger. It is immaterial, however, by what process the learned referee reached the conclusion found in his decision. It is his decision, not his opinion, which is under review; and it suffices for the affirmance of the judgment that, upon the facts as they appear in the record, his conclusion was right. We have no doubt, upon a review of all the evidence, that the supplementary agreement spoke the substantial truth, and the whole truth, and that the defendants simply agreed thereby to give the purchasers of the license $10,000 worth of chemicals to keep them to their original contract.

The contract between the defendants and Wood, the plaintiffs' assignor, provided that:

"Should any legal or other unavoidable special expense occur in collecting any of the moneys due to us under any of the foregoing mentioned contracts, then the commission or commissions due thereon shall be only upon the net sum collected and received by us."

It is now claimed that the amount of the chemicals furnished under the modification agreement is a special expense, and should be deducted from the license fee before computing the plaintiffs' commission. This claim conflicts with the defendants' own view of their rights prior to the trial, and is plainly untenable. The orig-

inal contract with the powder company provided that it should buy all of its chemicals from the defendants. But for the modification of this contract, the plaintiffs would be entitled to commissions on the sums so far received from this source. The basis on which to compute their commissions would be the $20,000 for the license fee, plus the amount of chemicals sold. This sum has been reduced by the exact amount of such chemicals, and commissions allowed only upon the balance. In doing this, the referee treated the furnishing of the chemicals as a special expense, and deducted it as such. The defendants are not entitled to have the amount deducted again.

The judgment should be affirmed, with costs. All concur.